```
                                                    FILED
                                          USDC, WESTERN DISTRICT OF LA
                                          ROBERT H. SHEMWELL, CLERK
        UNITED STATES DISTRICT COURT      DATE    4-6-00
        WESTERN DISTRICT OF LOUISIANA
             SHREVEPORT DIVISION          BY       CM
```

BRANDON HAYNES                          CIVIL ACTION NO. 99-1257

versus                                  JUDGE WALTER - SEC P

WARDEN, LOUISIANA                       MAGISTRATE JUDGE PAYNE
STATE PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction and Summary

Brandon Haynes ("Petitioner") was convicted by a Caddo Parish jury of the first degree murder of Fang Yang. He avoided the death penalty when the jury deadlocked at the penalty phase. A mandatory sentence of life imprisonment was imposed. Petitioner seeks federal habeas relief on a single issue. He complains that his trial attorneys rendered ineffective assistance when they conceded in the opening statement, against the Petitioner's wishes, that Petitioner was guilty of acts that would constitute second degree murder. The attorneys explained that they were forced to adopt that strategy because there was overwhelming evidence of guilt, and their denial of guilt during the first phase of the trial would cost them needed credibility if the case proceeded to the penalty phase. And if the attorneys were successful in getting a second degree murder conviction, the possibility of the death penalty would be avoided. The State contests the issue on the merits, admitting that Petitioner has exhausted his state court remedies.



For the reasons that follow, it is recommended that the petition be denied.

**The Evidence Against Petitioner**

Petitioner was represented by two experienced members of the Indigent Defender Office. The prosecution's evidence showed that Petitioner was employed on a crew involved in the construction of the Biomedical Research Center in Shreveport. After completing his day shift, going home and having dinner with friends, Petitioner returned to the building site. He encountered a worker who told him that he should not be there. Petitioner walked away but did not go home. Instead, he abducted Fang Yang from the adjacent medical school building. Yang was a Chinese graduate student who had a reputation for hard work and long hours at the lab.

Petitioner took Yang to the roof of the 10-story Biomedical Research Center. He raped her, robbed her and cut her several times with a knife. The next morning, workers found Yang's body on the ground where she landed after plunging from the roof. The fall was the cause of Yang's death. The non-fatal knife wounds were in the nature of compliance wounds or torture wounds.

All of these facts were easily established by evidence such as (1) surveillance video that captured Petitioner's presence on the upper floors of the Biomedical Research Center, (2) surveillance video of Petitioner disconnecting some of the cameras, (3) DNA evidence of Petitioner's semen in Yang's vagina and rectum, (4)

Yang's wallet and photo identification were found hidden in the wall of Petitioner's home within hours of the murder, (5) a knife was found in Petitioner's car, and (6) the coroner's expert testimony. There was other evidence, but this list is sufficient to show that the defense team was facing a difficult case.

**Opening Statements**

First degree murder, which carries a potential death penalty, includes the killing of a human being when the offender has specific intent to kill or inflict great bodily harm and he is engaged in the perpetration or attempted perpetration of certain enumerated felonies. La.R.S. 14:30. The prosecution's theory for a first degree murder conviction was that Petitioner had killed Yang intentionally while engaged in one or more of the enumerated felonies, which include second degree kidnapping, aggravated rape and armed robbery. The abundance of evidence against Petitioner was described in detail. (Tr. 588-602)

The defense strategy was to avoid a first degree murder conviction and the possibility of the death penalty. The jury was asked to find that the evidence permitted a conviction only of the non-capital crime of second degree murder. Second degree murder includes (1) a killing committed when the offender has the specific intent to kill or inflict great bodily harm and (2) a killing committed, even though the offender does not have the intent to kill or inflict great harm, if the offender is engaged in one of

the enumerated felonies such as rape, robbery or kidnapping. La.R.S. 14:30.1. The defense theory was that the facts that the prosecution could prove beyond a reasonable doubt permitted a conviction only under the second form of second degree murder.

Defense counsel began his opening statement by telling the jury that he wanted to be "up front" with the jury and was not going to come out of the blue later with a surprise defense. He stated that the defense was not going to contest that Petitioner raped Yang, kidnapped her or took her wallet. He also conceded that Yang died either during the commission of one of those felonies or just after, and the cause of her death was injuries sustained in the fall from the roof. He admitted that the evidence would show those facts, but then asked the jury to listen carefully for what the evidence would not show: specific intent to kill. (Tr. 602-04)

Defense counsel pointed out the State's burden of proving each element of the first-degree offense and that there was no hard evidence that Petitioner intended Yang's death. She admittedly went off the roof, but the immediate cause of her plunge was shown only by circumstantial evidence. He pointed out that it was reasonable to conclude from the circumstantial evidence that Yang's death was unintentional because (1) she accidentally fell during a struggle, (2) she stepped off the roof while attempting to flee her attacker, (3) she accidentally stepped off the roof after the

attack because she could not see well without her glasses (which were missing), or (4) Yang committed suicide after the attack because of humiliation and dishonor. Counsel carefully explained his argument that the lack of direct evidence of intent to kill permitted a conviction for second degree murder, but not first degree murder. (Tr. 602-09)

**Petitioner's Objection**

At the conclusion of defense counsel's opening statement, Petitioner rose and addressed the court. After the jury was removed, he told the judge that he strenuously disagreed with his attorney's statement that he was guilty of second degree murder. He maintained that he was not guilty of first or second degree murder. The two defense counsel, who each had at least ten years of experience and had tried a number of jury trials, stated their opinions that the defense offered was the only credible defense and that to employ an unbelievable defense at the guilt stage would seriously undermine their credibility at the penalty phase (if necessary).

Petitioner stated that, "I would rather it cost me my life than you all sell somebody out. You all ain't no lawyers." The court reassured Petitioner that he had excellent lawyers and that he was free to testify as he wished at the appropriate time. Petitioner replied, "So I can't say nothing about my lawyers. I'm just stuck with them even though they're getting up here doing this

5

junk here?" The court stated that Petitioner's remarks were noted for the record, and the trial continued. (Tr. 609-14)

**The Remainder of the Trial**

As it turned out, the prosecution delivered all the evidence that it had promised. Petitioner elected not to testify. (Tr. 946-47) In closing arguments, the prosecutor again outlined the overwhelming evidence against Petitioner. (Tr. 950-62)

Defense counsel began his opening statement by reminding the jury that the defense team has been "up front" with the jurors from the beginning. He again conceded that the evidence proved a lot of things like rape, abduction and possibly robbery. He then concentrated on what the evidence did not prove.

> "The only issue we are contesting is whether or not Mr. Haynes intentionally killed the victim, Fang Yang. That is it. It is the only issue. ... I said there would be no evidence, no evidence, as to how she went off the roof. Without evidence as to how she went off, there is no evidence that he caused, much less intended, her death."

(Tr. 962-64) He again outlined the possibilities that Yang fell during a struggle, stepped off the roof accidentally, during flight or as the means of committing suicide. He carefully reviewed the evidence and pointed out the facts and omissions that supported his theory. (Tr. 964-75) Despite counsel's arguments, the jury found Petitioner guilty of first degree murder. As noted above, a mandatory life sentence was imposed because the jury could not agree unanimously upon the death penalty.

**The State Court Decision**

This court's evaluation of a habeas claim must begin with the state court's decision. The last reasoned state court decision was that rendered by the state appellate court when Petitioner raised his ineffective assistance claim on direct appeal through a pro se brief. The court judged the claim under the rules set forth in Strickland v. Washington, 104 S.Ct. 2052 (1984). The court treated the issue as follows:

> Here counsel's strategy was to persuade the jury against a capital verdict in the bifurcated proceedings. The State did not rely on defense counsel's concessions. The State's evidence was legally sufficient to prove that Haynes was engaged in one or more of the enumerated felonies in the first degree murder statute. Based on the totality of the evidence, a reasonable juror could have concluded that Haynes had committed the aggravated kidnapping, rape, and armed robbery of Fang Yang. Because the evidence (the wallet, the rape and the DNA and blood evidence) proved that Haynes committed the underlying felonies, only one of which was necessary to convict, Haynes was not prejudiced by counsel's strategy to focus on the specific intent element and the requirement that specific intent be proved by what the circumstances indicated to the exclusion of other reasonable hypotheses of innocence. Haynes's counsel raised hypotheses that were arguably innocent, which we have addressed.
>
> Whatever the reasons for the jury's inability to agree on a capital verdict, Haynes's counsel succeeded in avoiding the death sentence. We find no merit in Haynes's pro-se assignment.

State v. Haynes, 662 So.2d 849, 853 (La. App. 2d Cir. 1995), writ denied, 667 So.2d 1050 and 747 So.2d 11 (La.).

**Standard of Review**

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective

assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 104 S.Ct. at 2064. Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. <u>Id</u>. 104 S.Ct. at 2068.

A federal court may not grant habeas relief on a <u>Strickland</u> claim that was denied on the merits by the state court unless the state court's decision was an "unreasonable application" of <u>Strickland</u>. 28 U.S.C. §2254(d); <u>Kitchens v. Johnson</u>, 190 F.3d 698, 701 (5th Cir. 1999). A state court's application of <u>Strickland</u> is unreasonable only if all reasonable jurists considering the question would be of one view that the state court ruling was incorrect. <u>Id</u>.

**Analysis and Conclusion**

**A. Deficient Performance**

After carefully reviewing the record, the court finds no plausible defense other than the one offered by counsel. The defense offered was not just the only defense available; it was a sound strategy given the facts of this case. There does not appear to be a Supreme Court decision which directly addresses when counsel may or may not concede guilt on an element or charge

8

without being labeled ineffective. Most lower courts recognize that a concession (in whole or in part) of guilt, especially in capital cases, can be a sound tactical decision, designed to bolster credibility for more plausible defenses or the penalty stage. See, e.g., Heath v. Jones, 941 F.2d 1126, 1139-40 (11th Cir. 1991) (admissions of guilt during guilt phase was reasonable strategy in light of overwhelming physical evidence and a confession); and Ramirez v. U.S., 17 F.Supp. 2d 63, 68 (D.R.I. 1998) (collecting cases in which concessions were deemed wise strategy), aff'd, 187 F.3d 622 (1st Cir. 1999). See also Clayton v. Gibson, 199 F.3d 1162, 1177-78 (10th Cir. 1999) (lack of vigorous defense at guilt stage in the face of overwhelming evidence against defendant was designed to maintain credibility at the penalty phase).

On the other hand, some courts have held that even where the evidence of guilt is overwhelming and the strategy appears entirely reasonable, counsel must have the consent of his client before he makes the concession. See Francis v. Spraggins, 720 F.2d 1190, 1194 (11th Cir. 1983), cert. denied, 105 S.Ct. 1776 (1985);[1] Magill v. Dugger, 824 F.2d 879, 883-888 (11th Cir. 1987) (counsel was at fault for conceding guilt throughout the trial and calling

---

[1] Francis holds that: "Where a capital defendant, by his testimony as well as his plea, seeks a verdict of not guilty, counsel, though faced with strong evidence against his client, may not concede the issue of guilt merely to avoid a somewhat hypocritical presentation during the sentencing phase and thereby maintain his credibility before the jury." This case does not fall squarely within that statement because Haynes did not testify at this trial.

defendant to testify and admit guilt); U.S. v. Simone, 931 F.2d 1186, 1197 (7th Cir. 1991), cert. denied, 112 S.Ct. 584 (1991) ("We do not approve of a defense counsel's deliberate, explicit admission that a jury should find his client guilty of a charge in the absence of any suggestion that the defendant concurred in the decision to proceed in such a manner."); and Ramirez, 17 F.Supp.2d at 68 ("The failure to obtain a defendant's approval before conceding guilt on any charge, no matter how tactically sound the concession may have been, is not a practice that should be condoned.").

Petitioner in this case not only made clear that he did not agree with this strategy, but said: "I specifically asked my lawyers not to do what they - they said they were going to do this second degree junk. I don't like that. I mean, I'm not guilty. I don't feel I'm guilty of second degree or first degree and I don't agree with them." (Tr. 611) Accordingly, it is possible that Petitioner can prevail on the performance prong of the Strickland test even though the court finds absolutely no fault with the strategy employed by his counsel.[2] Petitioner is the master of his defense, especially when it comes to critical issues such as guilt or innocence of murder.

---

[2] The state court decision did not specifically address the performance prong of Strickland, choosing instead to reject the claim for lack of prejudice. Accordingly, the court makes no effort to determine whether the state court decision was an unreasonable application of the performance prong of Strickland.

10

## B. Prejudice

Even if Petitioner could prevail on the performance prong, he is not entitled to relief on his ineffective assistance claim because he cannot show that any prejudice resulted from the concession of guilt to second degree murder. He was, after all, convicted beyond a reasonable doubt of the more serious crime of first degree murder. To show prejudice, Petitioner must establish a reasonable probability that absent the concession of guilt, the result of his trial would have been different. The court has no doubt that the verdict at the guilt stage would not have differed had the defense team elected a different strategy such as relying solely on the State's heavy burden of proof without articulating an alternative set of facts or legal theory. (Petitioner has never articulated any alternative defense.) On the other hand, had the defense team pursued a more aggressive but less credible defense, it may not have succeeded in avoiding the death penalty at the penalty phase.

Most courts that have addressed similar claims have reached the same result; no prejudice can be shown. Examples include Clayton, 199 F.3d at 1178 ("Even if Clayton could establish his trial counsel provided ineffective first phase assistance, the evidence of Clayton's guilt is overwhelming and precludes a finding of prejudice."); Heath, 941 F.2d at 1140 (same); Magill, 824 F.2d at 888 ("[s]ince counsel's performance, deficient though it was, does not undermine our confidence in the reliability of the guilt

11

phase outcome, Magill's conviction should stand."); and <u>Ramirez</u>, 17 F.Supp.2d at 69 (no prejudice shown because "[b]ased upon the evidence presented, it is inconceivable that a jury could have found him not guilty of those charges even if the [concessions] had not been made."). The same is true in this case. Petitioner has never articulated any factual basis upon which this court or the state court could base a finding of prejudice. The state court's decision, therefore, was not an unreasonable application of <u>Strickland</u>.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED** and that Petitioner's complaint be **DISMISSED WITH PREJUDICE**.

### Objections

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10

days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 6th day of April, 2000.

                                                ROY S. PAYNE
                                   UNITED STATES MAGISTRATE JUDGE

cc: RSP, J. Walter

COPY SENT:
DATE: 4-7-00
BY: CMW
TO: Haynes
Estopinal

13